IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **CLYDE ZACHERY,** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 5:06-cv-314 (HL) |
| : | |
| **CRAWFORD COUNTY BOARD** : | |
| **OF EDUCATION d/b/a CRAWFORD** : | |
| **COUNTY SCHOOLS OR CRAWFORD** : | |
| **COUNTY SCHOOL DISTRICT,** : | |
| : | |
| Defendant. : | |

# ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 14). After consideration of the relevant materials, including the pleadings, the discovery and disclosure materials on file, and the affidavits, the Court grants, in part, and denies, in part, the Motion, as more fully set forth below.

**I.     FINDINGS**

In 2003, when he was 58 years-old, Clyde Zachery, an African-American, applied for the position of Athletic Director of the Crawford County School District. Three other individuals also applied for the position. The School District selected Tony Byrum, a white male in his mid-forties, for the position.

At the time that Zachery applied for the position, he had been employed by the School District as a teacher and coach for 36 years; he had been the Boys Varsity Basketball Coach for 28 years. During his tenure with the School District, he served

in various other leadership capacities.  He served as the coach for the middle school track team and was also the coach of the Varsity Baseball team.  He was the assistant principal of Crawford County High School from 1996 to 1998.  During 1999 and 2000, he served as the Athletic Director for the School District.

As a basketball coach, Zachery was very successful.  In 2003, he led his team to the State Playoffs; in 1998, he led them to the State Final Four.  Over the years his basketball teams enjoyed winning seasons and frequently competed at the regional or state level.  In recognition of his contribution to athletics in the School District, the middle school complex was named the Clyde Zachery Middle School Complex.

Zachery was also very successful as an educator.  He obtained his B.S. Degree from Fort Valley State University in 1972 and, in 1976, obtained his Master of Science from the same institution.  In 1984 he was named Crawford County Middle School Teacher of the Year.  In 2003 he was a health and physical education teacher, as well as the Boys Varsity Basketball head coach.

Zachery's competition in 2003 for the Athletic Director position included Tony Byrum, who was also very accomplished as a coach, albeit in football rather than in basketball. From 1990 to 1998, Byrum was the head football coach at Crawford County High School.  During his tenure there, Byrum's football teams also enjoyed winning seasons, won a regional championship, and also made it to the state semi-finals on two occasions.

Like Zachery, Byrum had a lengthy career with the School District, having been

employed with them from 1983 to 1999. Unlike Zachery, however, Byrum left the School District, going first to Heard County High School in 1999, and then to Macon County High School, where he was employed from 2000 until he returned to Crawford County in 2003. During his tenure at each of those schools, the teams that he coached enjoyed successful seasons.

Byrum's education experience is also similar to Zachery's. Byrum earned a B.A. in History/Education from Mercer University in 1983 and earned his Master's Degree in Education from Georgia College in 1988. At the time he applied for the Athletic Director position he was teaching history as well as performing his coaching duties. Byrum was ultimately selected for the Athletic Director position.

The head basketball coach and the head football coach at Crawford County Highs School each receive a coaching supplement of $4,000. However, the head football coach also receives pay for 40 summer days; the assistant football coach receives pay for 20 summer days; the band director receives pay for 20 summer days; and the head basketball coach receives pay for 10 summer days. The persons in the School District who hold the positions of football coach, assistant football coach, and band director are all members of the Caucasian race, while Zachery, who is the head basketball coach, is African-American.

Believing that the School District's decision to hire Tony Byrum as the athletic director was motivated by race and age discrimination, Zachery brought the lawsuit at issue here. In addition, Zachery contends that the disparity in pay for summer days for

3

the head basketball coach as compared to the other positions is the result of race discrimination.[1] After engaging in discovery, the School District has brought the Motion for Summary Judgment that is now before the Court.[2]

## II.    CONCLUSIONS OF LAW

### A.    Title VII–Disparate Treatment

Title VII provides that "[i]t shall be an unlawful employment practice for an employer–(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C.A. § 2000e-2(a) (West 2003).  As the United States Court of Appeals for the Eleventh Circuit has explained, "There are two types of discrimination actionable under Title VII, disparate treatment and disparate impact." Spivey v. Beverly Enters., Inc., 196 F.3d 1309, 1312 (11th Cir. 1999).  A disparate

---

[1] The Court notes that Zachery did not state a claim for either race or age discrimination in pay in the charge of discrimination filed with the EEOC. (Zachery Dep. Ex. 10.) Zachery raised a Title VII claim of discrimination in pay based on race for the first time in his complaint. (Compl. ¶ 12.) Defendant did not raise a challenge to the inclusion of this claim in the complaint. Thus, the Court deems waived any challenge to the inclusion of this claim based on failure to include it in the charge of discrimination. *See* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 121, 122 S. Ct. 2061, 2076 (2002) (noting that the Title VII administrative filing requirement is subject to waiver, estoppel, and equitable tolling).

[2] Plaintiff has named as the Defendant "Crawford County Board of Education d/b/a Crawford County Schools or Crawford County School District." It is well-established that a board of education, unlike the school district which it manages, is not a body corporate and does not have the capacity to sue or be sued, Cook v. Colquitt County Bd. of Educ., 412 S.E.2d 828 (Ga. 1992), whereas school districts are corporate bodies with the capacity to sue and be sued. Foster v. Cobb County Bd. of Educ., 213 S.E.2d 38 (Ga. Ct. App. 1975). Therefore, the proper Defendant in this case is the Crawford County School District.

treatment suit is one in which an employee alleges that the employer "treats some people less favorably than others because of their race, color, religion, sex, or national origin." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 1854 n.15 (1977). Disparate treatment can occur in a variety of circumstances, including hiring, discipline, promotion, and working conditions. Here, Zachery alleges he was treated less favorably than white applicants with regard to hiring and pay.

A plaintiff in a Title VII discrimination action bears the ultimate burden of proving that race was a determining factor in the challenged employment decision. A plaintiff may establish a case of discrimination through presentation of direct evidence of discriminatory intent or presentation of statistical evidence. Because direct evidence of discriminatory intent and statistical information are seldom available, a plaintiff may raise a rebuttable presumption of intentional discrimination using the burden-shifting analysis set out in McDonnell Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), as refined by the decision in Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981).

Zachery contends he can establish discrimination based on direct evidence. (Pl.'s Br. Opp'n Def.'s Mot. Summ. J. at 7.) As support for this proposition, Zachery relies on the definition of direct evidence set forth in Wright v. Southland Corp., 187 F.3d 1287 (11th Cir. 1999). However, the Eleventh Circuit has never adopted the definition of direct evidence set forth in Wright. Instead, the Eleventh Circuit employs a much more rigorous definition of direct evidence, as explained in Damon v. Fleming

5

Supermarkets of Fla., Inc., 196 F.3d 1354 (11th Cir. 1999), an age discrimination case:

> We have defined direct evidence of discrimination as evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee. In other words, the evidence must indicate that the complained-of employment decision was *motivated* by the decision-maker's ageism. As a result, only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age will constitute direct evidence of discrimination.

Id. at 1358-59 (citations and internal quotations omitted). Zachery has offered nothing that would constitute direct evidence under this heavy standard. Therefore, the Court will discuss each of Zachery's claims separately under the circumstantial evidence standard.

### 1.    Disparate Treatment in Hiring

To make out a prima facie case of racial discrimination in a failure-to-hire case using circumstantial evidence, a plaintiff must demonstrate (1) he belongs to a protected class; (2) he applied and was qualified for a position for which the employer was accepting applications; (3) despite his qualifications he was not hired; and (4) the position remained open or was filled by another person outside of his protected class. EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002). The School District concedes, for purposes of the Motion for Summary Judgment, that Zachery has established a prima facie case of race discrimination. (Def.'s Br. Supp. Mot. Summ. J. at 13.) "By establishing a prima facie case, the plaintiff creates a rebuttable presumption the employer unlawfully discriminated against [him]." Id. at 1272.

6

In order for the employer to rebut the presumption of discrimination, the employer must come forward with evidence that shows that its action was taken for some legitimate, non-discriminatory reason. Id. at 1273.  Here, the School District contends that it had three legitimate, non-discriminatory reasons for selecting Byrum over Zachery:  (1) Byrum possessed outstanding qualifications for the job; (2) Byrum was a successful football coach and the School District believed that the Athletic Director position would provide Byrum with incentive to return to the School District to coach football; and (3) the School District was under pressure from the community to bring Byrum back to Crawford County.  (Def.'s Br. Supp. Mot. Summ. J. at 14.)

As support for these reasons, the School District has provided the affidavit testimony of John Douglas, the Interim Superintendent of the School District, in which Douglas asserts that the members of the School Board offered the Athletic Director position to Byrum as an additional incentive to recruit him back to the School District and to improve the football program at the high school. (Douglas Aff. ¶ 6.)  Douglas also asserts that having the football coach as the Athletic Director is the "standard in the State of Georgia."  (Douglas Aff. ¶ 8.)   Dr. John Harper, who was the Superintendent of the School District in March of 2003, makes nearly identical statements in his affidavit (Harper Aff. ¶¶ 5, 7), as do School Board members Patrice Walker (Walker Aff. ¶¶ 4, 6), William Walker (Walker Aff. ¶¶ 4, 6), and Judye Sellier (Sellier Aff. ¶¶ 4, 6).  These reasons, while not compelling, are nevertheless sufficient to demonstrate a legitimate, nondiscriminatory reason for selecting Byrum over

Zachery.  *See, e.g.*, Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004) (noting that the defendant need not persuade the court that its proffered reasons are legitimate but need only produce evidence of a basis for its actions).

Once the defendant has offered evidence sufficient to rebut the plaintiff's claim of discrimination, the burden shifts to the plaintiff to come forward with evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Id.  In this regard, the Court construes Zachery's argument to be that if the School District's reasons were credible (1) they would not have advertised the position to other applicants; (2) the Athletic Director position currently would not be vacant; and (3) they could have offered Byrum other incentives to attract him to the head football coach position.  Zachery also relies on his belief that he was more qualified than Byrum as support for his contention that the School District's reasons are not credible.

The Court finds that Zachery has failed to come forward with evidence sufficient to create a material issue of fact with regard to whether the reasons given by the School Board were not the real reasons for hiring Byrum over Zachery.  Zachery has merely presented theories about how he believes the School District should have acted, not evidence that serves to rebut the School District's reasons.  As the School District notes, the fact that Byrum later resigned from the Athletic Director position, so that it is now vacant, is not inconsistent with its stated reason of using the Athletic Director position to lure Byrum to the job.  Additionally, Zachery's theory that the School District

could have offered incentives other than the Athletic Director position to attract Byrum is not evidence, but mere speculation, and, even if it were legitimate evidence, it does not serve to negate the legitimacy of the School Board's stated reason of offering the Athletic Director position as an incentive.  Finally, Zachery's theory that if the School District were truly interested in hiring Byrum it would not have advertised the position, is not supported by any evidence from which the Court can ascertain whether the School District even had the authority to hire without advertising for the position.

The Court also finds that a comparison of the qualifications of Byrum and Zachery does not advance Zachery's claim that the School District's stated reasons are not the real reasons for its hiring decision.  The School District suggests that the Court should not consider whether Zachery was more qualified than Byrum in deciding whether there is evidence of discriminatory intent unless the disparities in the qualifications of the two "'are so apparent as virtually to jump off the page and slap you in the face.'"  (Reply Br. at 2. quoting Lee v. GTE Fla., Inc., 226 F.3d 1249, 1254 (11th Cir. 2000)).  The Supreme Court of the United States recently disavowed the "jump off the page and slap you in the face" standard employed by the Eleventh Circuit.  *See* Ash v. Tyson Foods, Inc., 546 U.S. 454, 456-57, 126 S. Ct. 1195, 1197 (2006).  The Court suggested, instead, that "superior qualifications may be probative of pretext when combined with other evidence."  Id. at 458, 126 S. Ct. at 1198.  Here, Zachery has excellent credentials but they are not so superior to those of Byrum as to be probative of pretext. Moreover, Zachery has failed to offer other evidence to support his claim of

9

pretext and, in the absence of such evidence, there is nothing with which Zachery's qualifications may be combined.

"If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." Chapman v. AI Transp., 229 F.3d 1012, 1024-25 (11th Cir. 2000). Here, Zachery has failed to proffer evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the School District were not the real reasons for selecting Byrum over Zachery. Accordingly, the School District is entitled to summary judgment as to Zachery's Title VII claim of disparate treatment in hiring.

### 2. Disparate Treatment in Pay

A Title VII plaintiff can establish a prima facie case of wage discrimination if he can show he (1) is a member of a protected class, (2) was qualified for a job, and (3) was paid at a lower level than similarly situated employees outside the protected class. *See, e.g.,* Cooper v. Southwark Metal Co., Case No. Civ. A. 91-6961,1992 WL 236285 (E.D. Pa. Sept. 11, 1992), *aff'd without opinion*, 983 F.2d 1049 (3d Cir. 1992). As the Eleventh Circuit has recently explained, a Title VII plaintiff seeking to advance a claim of disparate treatment in pay based on race discrimination "must show that he occupies a job similar to that of higher paid persons who are not members of his protected class." Nicholas v. Bd. of Trustees of UAB, No. 06-14662, 2007 WL 3023209 (11th Cir. Oct. 17, 2007). A prima facie showing of disparate treatment is not intended

to be onerous.  See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

As with a disparate treatment in hiring claim, once a plaintiff establishes a prima facie case of discrimination, the defendant must articulate a legitimate, non-discriminatory reason for the pay disparity.  Meeks v. Computer Assoc. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994).  If the employer satisfies its burden, the plaintiff must then come forward with evidence sufficient to show that the employer's reasons for the disparity are not worthy of belief.  Ledbetter v. Goodyear Tire and Rubber Co. Inc., 421 F.3d 1169, 1186 (11th Cir. 2005).

Here, the Court finds that Zachery has satisfied his prima facie showing. He has shown that he is a member of a protected class, that he is the head of a boys' varsity sports program, and that he did not receive the same pay as did the other heads of similar programs.  Because Zachery has satisfied his prima facie showing sufficient to permit an inference of discrimination, the School District must come forward with a legitimate nondiscriminatory reason for the pay disparities.  The School District has satisfied its burden in this regard.

Zachery's allegations of disparate treatment in pay are based on the number of summer days for which he was paid, compared to the number of summer days for which other staff members were paid.  He was paid for 10 summer days, while the Boys Varsity Football head coach was paid for 40 summer days; the Boys Varsity Football assistant coaches were paid for 20 summer days, and the band director was paid for 20 days.

The School District rationalizes the pay differences according to whether practices for the activity are held during the summer and in the off-season. According to the Affidavit of John Douglas, the Boys Varsity Basketball head coach receives less summer pay because there are no officially sanctioned basketball practices and no player is required to attend practices during the summer months. By contrast, according to Douglas, football players are allowed to begin sanctioned practices on the first or second day of August, before the school year begins. These practices occur five days per week. The football coaches also participate in football practice for a two-week period in the Spring, and also attend weight-training sessions with the football players during the summer.

Like the football coaches, the band director must work with the band before the school year begins. The band members practice at least three weeks during the summer months, and Band Director is responsible for summer activities involving band and summer camps.

Douglas also explains that the pay disparity stems from the fact that the Boys Varsity Football head coach supervises 45 boys, while the Boys Varsity Basketball head coach supervises 15 boys. Douglas also maintains that the disparity in pay can be explained by the fact that varsity football brings in more revenue than basketball.

As with the School District's stated reasons for hiring Tony Byrum over Zachery, the Court finds that they are not compelling, but they are sufficient to demonstrate a legitimate, nondiscriminatory reason for paying the football coaches and the band

director more money than that paid to the Boys Varsity Basketball head coach. The burden thus shifts to Zachery to come forward with evidence that would permit a factfinder to conclude that the reasons given by the School District are not the real reasons for the disparities in pay.

Here, Zachery's evidence is that he works with the basketball program during the summer months. Even though the summer work is not sanctioned by the high school association, it occurs, nonetheless. He states that he provides instruction at summer basketball camps and coaches in approximately 30 basketball games during the summer. (Zachery Dep. at 11-12.) As he notes, while the time he spends during the summer months is not sanctioned by the high school association, neither are the days that the football coaches put in with their players prior to August 1 or 2, the dates on which sanctioned practices begin. Zachery has not offered evidence with respect to whether his summer work was expected or required by the School District, but neither has the School District offered evidence showing that it was neither expected nor required and, therefore, not compensable. And, although Zachery only supervises 15 boys in the basketball program, he supervises them for a much longer time period than the football coach supervises his team, beginning in October and continuing through February or March.

A plaintiff can prove pretext "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Jackson v. Ala. State

13

Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting Burdine, 450 U.S. at 256, 101 S. Ct. at 1095). Here, Zachery's evidence that he put in many hours during the summer, without getting comparable pay, may be sufficient to persuade a jury that the School District's stated reasons for the disparity in pay are not the real reasons and that the real reason is discrimination. Thus, the Court finds Zachery has come forward with evidence sufficient to raise a jury issue as to whether the employer's reasons for the disparity are not worthy of belief. And, as to Zachery's claim for disparate treatment in pay based on race, the School District's Motion for Summary Judgment is denied.

**B.    ADEA**

In addition to his claims under Title VII, Zachery alleges that the School District's decision to hire Byrum, a much younger candidate, served to violate his rights under the Age Discrimination in Employment Act ("ADEA"). The ADEA makes it unlawful for an employer to, among other things, fail or refuse to hire or "otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1) (West 1999). Discrimination claims brought under the ADEA are governed by an evidentiary framework similar to that which governs claims brought under Title VII. *See, e.g.,* MacPherson v. Univ. of Montevallo, 922 F.2d 766, 774 (11th Cir. 1991).

With respect to the decision to hire Byrum, who was in his 40s, over Zachery, who was then 58-years-old, the parties have not put forth any arguments or evidence other than what has already been discussed in the context of Zachery's Title VII claim

14

for race discrimination. Given that the analysis for a Title VII claim for failure to hire, and an ADEA claim for failure to hire, is the same, and given that no evidence or arguments have been advanced in support of the ADEA claim that have not already been considered by the Court in analyzing the Title VII claim for failure to hire, it follows that the same result must obtain for the ADEA claim insofar as it relates to a failure to hire. Accordingly, the Court finds that the School District is entitled to summary judgment as to Zachery's ADEA claim for discrimination in hiring.[3]

## III.  CONCLUSION

The Court finds Defendant is entitled to judgment as a matter of law as to Plaintiff's claim under Title VII for race discrimination in hiring and is also entitled to judgment as a matter of law as to Plaintiff's claim under the ADEA for age discrimination in hiring and Defendant's Motion for Summary Judgment is granted as to these issues. The Court finds there are issues for determination by a jury with respect to whether Defendant's failure to pay Plaintiff the same number of summer days as other non-minority employees was motivated by race. Accordingly, the Court denies Defendant's Motion for Summary Judgment as to Plaintiff's claim under Title VII for

---

[3] Zachery's complaint does not set out an ADEA claim stemming from the disparites in pay. In his brief in opposition to Defendant's Motion for Summary Judgment, he makes reference to the other coaches and the band director as "younger" when discussing the pay disparities and argues that the only explanation for wage discrimination is race and age discrimination. (Pl.'s Br. Opp'n at 3.) A plaintiff may not amend his complaint through argument in a brief opposing summary judgment. Cooley v. Great Southern Wood Preserving, Case No. 04-15912, 2005 WL 1163608, **3 (11th Cir. May 18, 2005). Therefore, to the extent that Zachery is attempting now to insert a claim for discrimination in pay under the ADEA, that effort is unavailing.

discrimination in pay.  The Clerk is directed to set this matter for trial at the earliest opportunity.

**SO ORDERED**, this the 24th day of September, 2008.

                                               *s/   Hugh Lawson*
                                               **HUGH LAWSON, JUDGE**

mls